Considered by GREEN and ARUNDELL.

J. H. CROSS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5577.   Promulgated November 22, 1927.

*F. W. McReynolds, Esq.*, for the petitioner.
*J. Arthur Adams, Esq.*, for the respondent.

## OPINION.

MORRIS: The question raised is whether the petitioner is entitled to personal service classification which is defined in section 200 of the Revenue Acts of 1918 and 1921 as follows:

\* \* \* A corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include \* \* \* any corporation 50 per centum or more of whose gross income consists either (1) of gains, profits, or income derived from trading as a principal, or \* \* \*.

The petitioner claims the benefit of an exception to the general method and extent of taxing corporations. The burden is upon it to show that it clearly comes within the terms of such exception. *Hubbard-Ragsdale Co.* v. *Dean*, 15 Fed. (2d) 410. As the principal stockholders were regularly engaged in the active conduct of the business the second element of the definition would seem to be fully met. It is necessary, however, not only that they shall be regularly engaged, but the income from the corporation must be derived primarily from their activities. Examining the record in connection with this element of the definition we are unable to find that the peti-

tioner has sustained the burden of showing that it clearly comes within it. With respect to the duties of those connected with the corporation, there is but little evidence in the record except as to the principal stockholders. We do not know how many employees made up the staff, or what kind of service such employees performed. J. H. Cross in the course of his testimony stated that all the employees outside of the principal stockholders were merely clerical employees, but on cross-examination he said that a sales plan or copy plan of any client was never decided by any individual but always in conference with the members of the organization, and that some of the employees who were competent members of the organization were taken into the conference. This would seem to indicate that there were some employees who were not merely engaged in routine clerical work. If the services and value thereof, which should be attached to the employees, are to be measured in dollars of salaries paid, it is very apparent that the income can not be primarily ascribed to the principal stockholders. In each of the taxable years the salaries paid employees exceeded the salaries paid the officers and stockholders.

In the *Appeal of Patterson-Andress Co.*, 6 B. T. A. 392 where the question of to whom income should be primarily ascribed was raised, we said:

In our opinion this clause means more than that the stockholders shall obtain the clients and supervise the work, or that clients shall look to their experience; it means, among other things, that the corporation may not rely upon non-stockholders to do a substantial amount of the work which produces the income whether such work be detailed or supervisory. Just as another clause excludes from personal service classification those corporations where capital contributes materially to the income, so does this clause exclude corporations where the services of employees so contribute.

A further ground, which standing by itself might not be fatal to the petitioner's contention, but which is cumulative, is that capital was an income-producing factor. For the year 1919 the return shows interest, trade discounts and miscellaneous income of $9,420.43 whereas the gross income from operations was only $80,974.20. Although the petitioner was fairly successful in collecting from the advertisers prior to the time of its payments to the publishers, the evidence shows that in order to retain the good will of the publishers payments were made to them in sufficient time to secure the discount although the amounts had not been received from the advertisers. The balance sheet as of December 31, 1920, shows accounts receivable of $118,354.21, which includes the 15 per cent commission, and accounts payable of $84,422.03, indicating an advance by the petitioner, exclusive of commission, of approximately $16,000. The accounts receivable on the balance sheet of December 31, 1921, are $179,872.86 and the accounts payable $141,686.56, indicating an advance at that time exclusive of commission of approximately $11,000.

Petitioner relied upon *Massengale Advertising Agency*, 2 B. T. A. 26, as a precedent for granting personal service classification. In that appeal it appeared that Massengale prepared the cuts and drawings and also drafts of advertising matter, made a print and offered suggestions as to the best medium or mediums of advertising and gave a statement of the costs thereof. Two or three artists were employed for the purpose of making drawings, some of which had been roughly sketched by Massengale. All the business was done through the personal services of the principal stockholders. The absence of any such showing in the instant proceeding clearly distinguishes the two cases. Evidence that the principal stockholders supervised and directed the services performed, without more detail as to their duties or the nature of the services rendered by an unknown number of employees, does not bring the case within the *Massengale* decision. Cf. *Continental Accounting & Audit Co.* v. *Commissioner*, 7 B. T. A. 330.

*Judgment will be entered for the respondent.*

Considered by TRAMMELL, MURDOCK, and SIEFKIN.